UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   ED CV 08-01249-SGL(JCx)                                 Date:  July 13, 2009
Title:        MARCELO CUNHA -v- HANSEN NATURAL CORPORATION
               ED CV 08-01278-SGL(JCx)
               TERRY D. BROWN -v- HANSEN NATURAL CORPORATION, et al.
=====================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

   Cindy Sasse                                         None Present
   Courtroom Deputy                                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                            None present

PROCEEDINGS:     **ORDER GRANTING MOTION TO CONSOLIDATE;**

**ORDER APPOINTING STRUCTURAL IRONWORKERS AS LEAD PLAINTIFF AND COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS LLP AS LEAD COUNSEL**

   Local-based beverage maker Hansen Natural Corporation, most noteworthy for its high-charged caffeine "Energy" drink and Java "Monster" drink line (the latter marketed using a menacing looking "M" written as if clawed by a monster superimposed on an equally dark and foreboding background), has become embroiled in a dispute with its shareholders since it reported in its 2007 third quarter financials that it expected revenue growth would be lower than previously projected and that it would have decreasing profit margins allegedly due to certain inventory manipulations. There are other, associated allegations of insider trading.

   Presently before the Court is a class action suit brought by shareholders against the company for various securities violations, see <u>Terry Brown v. Hansen Natural Corporation</u>, EDCV-08-1278-SGL (JCx) and <u>Marcelo Cunha v. Hansen Natural Corporation</u>, EDCV-08-1249-SGL

(JCx).[1]

The present motions for the Court's consideration in <u>both</u> cases involve consolidating the class action suits into one.  Everyone (including defendant Hansen) agrees that such consolidation should occur and, accordingly, the Court hereby **GRANTS** the motion to consolidate.  What the parties disagree about is who should be designated as the lead plaintiff and, by extension, who should be designated as lead counsel in this consolidated action.

Unlike with shareholder derivative cases, there is a statute, section 78u-4(a) of the Private Securities Litigation Reform Act ("PSLRA"), that governs the appointment of lead plaintiff in securities class actions and, just as importantly, a Ninth Circuit decision, <u>In re Cavanaugh</u>, 306 F.3d 726 (9th Cir. 2002), expounding upon this statutory framework.  The PSLRA instructs district courts to select as lead plaintiff the one "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(I).  Rather than trying to paraphrase the steps involved in arriving at the conclusion of who is the "most capable" plaintiff, the Court will simply quote the Ninth Circuit's recitation of the same:

> The Reform Act provides a simple three-step process for identifying the lead plaintiff pursuant to these criteria.  The first step consists of publicizing the pendency of the action, the claims made and the purported class period.  The first plaintiff to file an action covered by the [PSLRA] must post this notice "in a widely-circulated national business-oriented publication or wire service."  The notice must also state that "any member of the purported class may move the court to serve as lead plaintiff."
>
> In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the "presumptively most adequate plaintiff" — and hence the presumptive lead plaintiff — the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its

---

[1] Also on the Court's docket is a pair of cases wherein shareholders have brought a shareholder derivative action against the company's officers and directors for corporate mismanagement, see <u>Raymond Merckel v. Rodney Sacks, et al.</u>, CV-08-6788-SGL (JCx) and <u>Janis Dislevy v. Rodney Sacks</u>, EDCV-08-1654-SGL (AJWx).

> attention on <u>that</u> plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."  If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.  If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.
>
> The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.  In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery if they "demonstrate a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class."
>
> At first glance, it may seem incongruous to allow other plaintiffs to present evidence casting doubt on the determination just made by the district court [during step two of the process] that the presumptive lead plaintiff satisfies Rule 23's adequacy and typicality requirements, but the apparent incongruity is easily resolved: At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims.  At the third stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy.

<u>Cavanaugh</u>, 306 F.3d at 729-30 (emphasis in original).

Here, neither side disputes that the first step in the process was met.  The same day the first-filed action, <u>Cunha v. Hansen Natural Corporation</u>, EDCV-08-1249-SGL (JCx), was instituted, a notice of that class action was published in <u>Business Wire</u>, a widely circulated national business-oriented wire service, advising members of the proposed class of their right to move the Court to

serve as Lead Plaintiff. (Decl. Sabrina Kim, Ex. C; see also 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 23.191[2] at 23-613 (3rd ed. 2009) ("a press release on Business Wire, which disseminates the information electronically to the news media, on-line services, and computer databases available to the investment community, satisfies the early notice requirement")). Nor does anyone refute who, among the two movants seeking to be declared lead plaintiff, "has the largest financial" stake — New Jersey Carpenter's Pension Fund ("NJCPF") has the most at stake. During the relevant class period, NJCPF held 7,790 net shares of Hansen Natural Corporation common stock and when the walls came crashing down suffered losses of approximately $159,941. The other movant — Structural Ironworkers Local Union #1 Pension Fund ("Structural Ironworkers") — during the relevant class period held 4,400 net shares of Hansen Natural Corporation's stock and suffered losses of approximately $90,361.

     Nor does anyone challenge the sufficiency of the declarations and other evidence submitted by NJCPF in establishing its prima facie case that it meets Rule 23(a)'s typicality and adequacy requirements. NJCPF has submitted a certification from its administrative manager, attesting to the various criteria needed to establish said prima facie case and satisfies the second step of the Cavanaugh process.

     Instead, the focus is on the third step of the process, wherein the Structural Ironworkers attempt to rebut the presumption as to NJCPF's adequacy (but not its typicality) by arguing that NJCPF is stretched too thin by the numerous other class action lawsuits it is or has been involved in over the past three years. Specifically, Structural Ironworkers present the following facts:

> [T]he four underlying sub-funds that comprise the New Jersey Carpenters Fund have moved for lead plaintiff or filed securities or shareholder derivative lawsuits on no less than 21 occasions just since 2005. And notably, in the approximately five months since the complaint was filed in the instant action, the sub-funds have been appointed lead plaintiff in three cases. Additionally, New Jersey Carpenters Fund sub-funds are the sole movants for lead plaintiff in yet another two cases in which the lead plaintiff determination is currently pending. . . . Simply, New Jersey Carpenters Fund and its sub-funds . . . have over-extended their resources in securities litigation [and are] thus inadequate to represent the interests of the class and to monitor its counsel.

(Structural Ironworkers' Opp. at 1-2 (emphasis added)). This presentation of facts was later supplemented by the Structural Ironworkers the week before oral argument in this matter wherein it was disclosed that in the intervening time from when the parties pleadings were filed sub-funds to NJCPF have been "appointed lead plaintiff or taken on the role of lead plaintiff" in three more securities class action suits, to wit: "(1) New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4, Case No. 1:08-cv-5093-HB (SDNY 2008); (2) New Jersey

Carpenters Health Fund v. Novastar Mortgage Funding Trust, Case No. 1:08-cv-05310-DAB (SDNY 2008); and (3) New Jersey Carpenters Health Fund v. RALI Series 2006-Q01 Trust, Case No. 1:08-cv-08781-HB (SDNY 2008)."[2]  (Notice Recent Developments at 2).

Structural Ironworkers then separates which of these cases the NJCPF's sub-funds has been formally appointed lead plaintiff and which it has taken on said role.  Specifically, according to the Notice of Recent Developments, sub-fund New Jersey Carpenters Health Fund was appointed lead plaintiff by the court in the Novastar Mortgage Funding Trust case on April 17, 2009.  (Notice of Recent Developments, Ex. 2).  In the other two matters (the HarborView and the RALI Series cases), the NJCPF sub-fund in question filed the sole lead plaintiff motion and subsequently was permitted to file a consolidated complaint, a practice which is "consistent with the role of lead plaintiff."  (Notice of Recent Developments at 2 n.1).

The PSLRA does have a provision covering situations where a potential lead plaintiff like NJCPF takes on too many cases to litigate and places limits on the same.[3]  The statutory provision in question states as follows:  "Except as the court may otherwise permit, consistent with the purposes of the [PSLRA], a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period."  15 U.S.C. § 78u-4(a)(3)(B)(vi).  This so-called 5-in-3 rule applies only where the purported lead plaintiff is or has served as lead plaintiff in other cases during the relevant time frame, it does not apply (in terms of counting toward the five case limit) to the number of cases the purported lead plaintiff has filed a securities class action complaint or to cases where it has moved to be designated, but was not approved, as lead plaintiff.  Moreover, even then the statutory provision's reach only goes back to cover a three year period from the date in question.  Judged by these statutory standards, appointment of NJCPF would transgress the PSLRA's 5-in-3 rule.

According to NJCPF, it currently is serving as a lead plaintiff "in only one active PSLRA action — In re Nvidia Corp. Sec. Litig., No. 5:08-CV-04260 (N.D. Cal. filed Sept. 9, 2008)."

---

[2]  In its Notice of Development, Structural Ironworkers misidentifies Case No. 1:08-cv-5310-DAB as the Royal Bank of Scotland case, but the case caption in the order filed in that matter identifies the lead named defendant as being Novastar Mortgage Funding Trust with the Royal Bank of Scotland noted as the twelfth named defendant.  Therefore, the Court will refer to the matter as the Novastar Mortgage Funding Trust case.

[3]  Although the provision is not precisely geared to toward resolving the issue of a proposed lead plaintiff's adequacy, if NJCPF meets the limits set forth in the statute for a party's ability to continue to serve as a lead plaintiff, it would bolster the argument that the party is adequate to be designated as the lead plaintiff at the outset.  See Moore's Federal Practice § 23.191[4] (observing that rule can and has been used by courts to bar a party from serving as a lead plaintiff, citing In re Telxon Corp. Sec. Litig., 67 F.Supp.2d 803, 819-822 (N.D. Ohio 1999) and Aronson v. McKesson HBOC, Inc., 79 F.Supp.2d 1146, 1156-57 (N.D. Cal. 1999)).

(NJCPF Reply at 5 (emphasis added)). That representation, however, has since been amended by subsequent developments (as noted in the Structural Ironworkers supplemental brief) demonstrating that NJCPF is at present serving as lead plaintiff in four active PSLRA cases. Regardless, the 5-in-3 rule is not confined to simply the number of presently active cases a party is serving as a lead plaintiff in, but applies to all cases (active or otherwise) the party in question has served as a lead plaintiff in the past three years. Nowhere in the statute suggest, much less does its language provide, that it is limited in the way advocated by NJCPF, and with good reason. Even once a case has been settled or finally adjudicated the lead plaintiff still remains tasked with a host of administrative duties. Moreover, if the case was dismissed against the class, there still remains the potential task of appealing said order, which also would tax the prospective lead plaintiff's attention and resources. In short, the ending of the formal case does not end the lead plaintiff's responsibilities to or for the class he, she or it was appointed to represent. This distinction is important because on NJCPF's own account, in the past three years it has been appointed lead plaintiff in three other so-called "inactive" cases: In re Biogen Idec, Inc. Sec. Litig., (D. Mass. 2005) (the case was later closed in September, 2008), HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc. (S.D. Cal. 2007) (dismissed in January, 2009), and New Jersey Carpenters Health Fund v. Home Equity Mortgage Trust, (S.D.N.Y. 2008). Thus, as it stands right now, appointment of NJCPF as lead plaintiff in this case would result in it having served (be it presently or formerly) as lead plaintiff in 8 cases in the past 3 years, which is well beyond the maximum limit placed by the PSLRA.

By the same token, the 5-in-3 rule does not apply, as suggested by Structural Ironworkers, to the number of cases filed or the number of times a potential lead plaintiff tried (but failed) to get appointed as lead plaintiff in other cases. Thus, Structural Ironworker's continued focus on the fact that NJCPF "has caused its sub-funds to institute or attempt to wrest control in no less than 21 lawsuits since 2005" is misplaced.

As noted, surpassing the limits placed in 15 U.S.C. § 78u-4(a)(3)(B)(vi) does not automatically require denying appointment of said plaintiff. A court is permitted by statute to deviate from this requirement so long as said deviation is "consistent with the general purposes of the [PSLRA]." 5 MOORE'S FEDERAL PRACTICE § 23.191[4] at 23-625. As a noted legal treatise has commented:

> The PSLRA seeks to restrict the use of "professional plaintiffs" who have only a nominal interest in the litigation and who act as lead plaintiff primarily to accommodate counsel. Congress intended that courts would have discretion to permit an exception to this five-action limitation for large institutional investors, who have a real interest in controlling the litigation and are not the type of lead plaintiff sought to be restricted. However, the statute does not create a blanket exception for institutional investors. Whether to allow an institutional investor an exception to the five-action limit depends on the circumstances and is within the court's discretion.

<u>Id</u>.  Therefore, the Court considers whether NJCPF (1) is an institutional investor rather than a professional plaintiff with only a nominal interest in the litigation who is acting simply to accommodate counsel, and (2) assuming so, whether the Court should exercise its discretion and permit a deviation from the 5-in-3 rule.

In its reply brief, NJCPF does address the situation of what to do if it was found that it had served as lead plaintiff in more than 5 cases in 3 years.  First, NJCPF argues that the 5-in-3 rule should only apply to cases in which NJCPF served as lead plaintiff, <u>not</u> where one of NJCPF's sub-funds solely or jointly with other sub-funds, the Vacation Fund, Annuity Fund, Pension Fund or Health Fund, was so appointed.  (Reply at 2-3 ("New Jersey Carpenters Health Fund, a separate legal entity that is not seeking appointment here")).  This emphasis on the legal fiction of these sub-funds "separate" legal identity is spurious.  As Structural Workers have noted <u>all</u> the NJCPF sub-funds share the same administrative manager, Mr. George Laufenberg, and share the same board of trustees.  (Structural Worker's Opp. at 6-7 ("[NJCPF] is comprised of four sub-funds that function essentially as a single unit.  Indeed, the four sub-funds share the same board of trustees, website, and, as evidenced by the 18 certifications signed by Administrative Manager, George Laufenberg, . . . [the same administrative manager]. . . .  While each of the four sub-funds participate in litigation in their own name, in some cases they participate in unison)).  Indeed, the 5-in-3 rule itself makes clear that it applies not only to the person itself, but also to the officers, directors, and fiduciaries of the proposed lead plaintiff.

In that vein, NJCPF ventures that it should be afforded more leeway insofar as the 5-in-3 rule is concerned because it is an "institutional investor," citing to the PSLRA's legislative history where it was noted that "institutional investors seeking to serve as lead plaintiff may need to exceed this [5-in-3] limitation and do not represent the type of professional plaintiff this legislation seeks to restrict."  H.R. Conf. Rep. No. 104-369 at 35 (1995), <u>reprinted in</u> 1995 U.S.C.C.A.N. 730. In arguing it is not a "professional plaintiff," NJCPF relies on a decision from the Northern District of California, which rejected the assertion that NJCPF was a "professional plaintiff" in an order entered December 23, 2008.  <u>See</u> <u>In re NVIDIA Corporate Securities Litigation</u>, Case No. C-08-4260-JW (Ware, J.).  Insofar as the <u>Nvidia</u> case is concerned, it must be noted when the order was entered and the conclusion drawn by Judge Ware — more than 7 months ago.  In Judge Ware's December, 2008, order, he noted that NJCPF had served as lead plaintiff in 3 cases in the past 5 years, and it was that simple conclusion that lead to his conclusion that NJCPF was not a "professional plaintiff"; there was no deeper inquiry into NJCPF's litigation history in arriving at the conclusion.[4]

That said, even were the Court to conclude that NJCPF should be considered an institutional investor that does not end the inquiry.  There is still the question of whether the Court should exercise its discretion to permit a deviation from the 5-in-3 rule.  NJCPF has pointed to a number of cases where courts have decided to deviate from the 5-in-3 rule in cases involving institutional investors.  <u>See</u> <u>In re Critical Path</u>, 156 F.Supp.2d 1102, 1112 (N.D. Cal. 2001)

---

[4] Counsel rejected the suggestion of the Court for an evidentiary hearing on this issue.

(permitting institutional investor to serve as lead plaintiff even though it had served as lead plaintiff in 6 cases in the preceding 3 years); Naiditch v. Applied Micro Circuits Corp., 2001 WL 1659115 (S.D. Cal. Nov. 2, 2001) (allowing appointment where institutional investor had served as lead plaintiff in 11 cases in 3 years); In re Gemstar-TV Guide Int'l Sec. Litig., 209 F.R.D. 447 (C.D. Cal. 2002) (7 cases in 3 years); In re SiRF Tech Holdings, Inc. Sec. Litig., 2008 WL 2220601 (N.D. Cal. May 27, 2008) (6 cases in 3 years).

In each of the cases cited to by NJCPF, there were special considerations given by the courts in question for why such a deviation was warranted beyond the fact that prospective lead plaintiff involved was an institutional investor. Thus, in Critical Path the district court permitted a deviation in the 5-in-3 rule because the prospective lead plaintiff in question was the "only acceptable institutional investor" who was seeking appointment. 156 F.Supp.2d at 1112 ("the main reason for this [allowing a deviation] is that, as noted above, the FSBA is the only acceptable institutional investor, and, indeed, the only acceptable large shareholder. The fact that the FSBA is in that position weighs heavily in favor of its appointment"). Likewise, in Gemstar, the district court permitted deviation because "there were no other suitable applicants for lead plaintiff." 209 F.R.D. at 454. The district court in Naiditch also permitted deviation when the alternative prospective plaintiffs were small individual investors with no experience in managing a securities class action. 2001 WL 1659115, at *3 ("Ritsert & Beavers have suffered far smaller losses than FSBA, and thus have less at stake. As individuals, they have to take time out from their personal lives to oversee a securities class action that will likely be complex, lengthy, and time-consuming. Their experience in the securities market, and particularly in securities litigation, appears to be limited, as there were no declarations indicating any securities expertise or securities litigation experience on the part of these two individuals"). Thus, in these three cases, deviation was permitted because there would have been no other adequate party to serve as lead plaintiff absent such deviation. Such a circumstance is not present in this case, as no one has suggested that Structural Ironworkers would be an inadequate lead plaintiff if judged on its own merits.

This then leaves the decision in SiRF Tech. This case provides the best support for NJCPF's position, as the court surmised that the legislative history compelled that the 5-in-3 rule be "narrowly applied with respect to institutional investors." 2008 WL 2220601 at *3. Nevertheless, even the SiRF Tech case acknowledged that there may be instances in which an institutional investor should not be relieved from the 5-in-3 rule. Id.

The large number of cases in which NJCPF, and its sub-funds, has been involved in over the past 3 years (totaling over 21) gives the Court great pause in deciding to deviate from the rule in this instance. Although only the number of times a prospective lead plaintiff has in fact been appointed lead plaintiff is used in deciding whether the 5-in-3 rule is violated, once that threshold has been exceeded courts are free to also consider the general litigious history of the prospective lead plaintiff.

Given the presence of an alternative institutional investor who stands ready and able to assume the function, given the degree to which NJCPF has exceeded the 5-in-3 rule, and given the degree to which NJCPF has sought to be appointed lead plaintiff, the Court declines to

exercise its discretion to permit deviation from the 5-in-3 rule in this instance.  Therefore, the Court **DENIES** NJCPF's motion to be appointed lead plaintiff, and **GRANTS** the Structural Ironworker's motion to be appointed lead plaintiff and for the law firm of Coughlin, Stoia, Geller, Rudman & Robbins LLP to be appointed lead counsel in these consolidated actions.

   **IT IS SO ORDERED.**